however, refused, and judgment was rendered dismissing the complaint, with costs. Subsequently the plaintiff moved to vacate the judgment and to open the default. From the order denying that motion this appeal is taken.

The plaintiff has mistaken her remedy. There was no default to be opened, hence the denial of the motion was inevitable. The judgment of dismissal was not the result of nonappearance of the plaintiff on the adjourned day, but of the refusal of the justice to grant her request for a further adjournment. That refusal can be reviewed only on an appeal from the judgment, and that appeal has not been taken. Sections 253 and 254 of the Municipal Court Act (Laws 1902, pp. 1562, 1563, c. 580) do not apply.

Appeal dismissed, with $10 costs to the respondent. All concur.

---

### KINNEY v. RUTLAND R. CO.

(Supreme Court, Appellate Division, Third Department. June 27, 1906.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMED RISK—QUESTION FOR JURY.

Where, in an action for injuries to a railroad switchman, a proper notice, as required by Laws 1902, p. 1748, c. 600, providing that the defense of assumed risk shall in all cases be a question of fact for the jury, was served, a nonsuit could not be sustained on the ground that plaintiff, with knowledge of defendant's fault, had by his contract assumed the risk.

2. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to a railroad switchman by being struck with a perpendicular switch rod as he passed the same while in the act of climbing on a car in the course of his duties to release a brake, whether defendant was guilty of negligence in maintaining such rod in close proximity to the track, and whether plaintiff was guilty of contributory negligence in failing to avoid the same, held for the jury.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 1022, 1089–1132.]

Appeal from Trial Term, St. Lawrence County.

Action by John Kinney against the Rutland Railroad Company. From a judgment of nonsuit, plaintiff appeals. Reversed.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Malby & Lucey (D. B. Lucey, of counsel), for appellant.
Badger & Cantwell (John P. Badger, of counsel), for respondent.

SMITH, J. The action is for negligence. At the close of plaintiff's case the defendant moved for a nonsuit, which was granted. The proper notice was served under chapter 600, p. 1748, of the Laws of 1902, so that this nonsuit cannot stand upon the ground that the plaintiff, with knowledge of the defendant's fault, has by his contract assumed the risk. It can stand only upon one of two grounds: First, that as matter of law the defendant has not been guilty of negligence; second, that as matter of law the plaintiff has been guilty of negligence which contributed to produce his injury.

In defendant's yard in Ogdensburg are a large number of tracks. Among them are what are called "switch tracks 3 and 4." Switch track 3 runs from the main line east of the station to the local freight shed west of the station. A spur called track No. 4 branches off the southerly side of No. 3, and extends west a short distance, and is used exclusively for storing cars temporarily. Switch track 4 is connected with switch 3 by a switch. That switch is in part composed of a wooden framework, which is placed between track 3 and the track northerly thereof. It is an old-fashioned switch, the framework of which is about 4 feet from the base, and above the framework the switch rod reaches up 13 inches. This switch is about 3 feet from track 3, 3 feet 5 inches from track 4, and about 4 feet from the track northerly from track 3. This rod is a perpendicular rod, attached to the southerly side of this framework. Upon the 10th day of October, 1904, the plaintiff was one of a switching crew, and was required to get some cars from switch track 4. He was taken by the engine down to said switch track, and some cars were put on, and the engine started up. It was noticed that upon one car the brake was set, and it became plaintiff's duty to climb upon that car and loosen the brake. It was the custom among railroad men, and was clearly the duty of the plaintiff, to do this while the cars were moving. Plaintiff was standing north of this track. In order to get upon the car, he had to pass upon switch track 3. Upon that track the ties were standing up considerably from the ground, so far, at least, as to require careful heed on his part that he should not stumble either over the ties or over the north rail of track 3. He jumped upon the car while it was moving, and while in the act of climbing upon the car was struck in his right side by this perpendicular rod upon the switch described, and thereby received the injuries for which this action is brought.

We are of opinion that the trial justice was not authorized to dismiss the plaintiff's complaint because of lack of proof of defendant's negligence. It appears in the case that other switches were used in the same yard, which were ground switches, with which an accident of this kind could not have happened. The bottom of a freight car is 3 feet 1½ inches above the rail. One standing upon the step would be 10 inches lower, so that, while the evidence is not entirely clear, the jury might well have found that this rod would come within about 16 inches of the car as it passed, and the top of the rod would be from 2 to 3 feet higher than the foot of a man standing upon the step of the car. Formerly these switches were made with a rod extending 2 or 3 feet higher than the rod in question, and upon the top of that rod were placed some markers. Because of the dangerous character of such a construction the top of this rod was cut off. It was left, however, 13 inches above the frame of the switch, and no reason is given why it could not have been cut down to the frame. It is in evidence that, in switching cars from place to place, brakemen, in order to perform the services required of them, are required to jump upon the cars and ride for a ways. With this custom known and permitted by the defendant, we cannot say, as a matter of law, that the defendant was not negligent

in leaving a structure of this kind in such close proximity to a car, upon the side of which one of its workmen might be compelled to ride.

Nor do we think that the trial judge was justified in taking from the jury the question of the plaintiff's contributory negligence. It is not always possible to clearly distinguish between circumstances upon which is authorized the defense of contributory negligence and that of assumed risk. While the defense of assumed risk is one based upon the contract relation, and while that defense has been made by the statute above cited in all cases a question of fact for the jury, the same facts which will justify such a defense may show that, as matter of law, the plaintiff himself was at the same time guilty of a want of such reasonable care as is required of him in order to fasten liability upon the defendant for an injury received. On the other hand, the defense that the plaintiff assumed the risk might be available where the facts were such that the court could not say, as matter of law, that the plaintiff was negligent. In this case the plaintiff in running to the car was required to look well to his footing that he should not stumble over the ties and rails over which he was compelled to pass in reaching the car upon which he was to climb to loosen the brake. He was required both by the direction of the yardmaster and the exigency of the situation to make haste that they might draw out of the way of a passenger train which was waiting to come upon the track. He swears that he had passed many of these switches, and possibly this very switch, while upon the side of a car, without injury. Under these circumstances, we think it was for the jury to say whether plaintiff exercised the care of a reasonably prudent man, or was guilty of such negligence as would preclude his recovery.

The judgment of the trial court should therefore be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.